## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| LEONIE HILL CAPITAL PRIVATE LIMITED, §§§§§§§§§§<br>  Plaintiff<br><br>vs.<br><br>DC PARTNERS SOLUTIONS PTY LTD, AND MARK SMITH,<br>  Defendants | Civil Action No. 1:22-cv-1277 |

### PLAINTIFF'S ORIGINAL COMPLAINT

Leonie Hill Capital Private Limited (**Plaintiff**) in the above-captioned civil action, files this Original Complaint against Defendants DC Partners Solutions Pty Ltd and Mark Smith (collectively, **Defendants**) seeking relief from egregious and harassing cyberconduct and a declaration of the parties' status and legal rights.

### I.    PARTIES

1. Plaintiff is an entity operating under the laws of Singapore. Plaintiff is an exempt private company limited by shares principal activities being hedge fund management and private equity.

2. Defendant, DC Partners Solutions Pty Ltd (**DC Partners**) is an entity organized under the laws of Australia. DC Partners can be served with process in accordance with the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. DC Partners' principal place of business is located at 6/111 Elizabeth Street, Sydney 2000, 299 Nancarrow Lane, Nashdale 2800 and may be served there, wherever a person authorized to serve it may be found, or by mail.

3. Defendant Mark Smith (**Smith**) is an individual, residing in Sydney Australia. Smith can be served with process in accordance with the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. Smith may be is located at 6/111 Elizabeth Street, Sydney 2000, 299 Nancarrow Lane, Nashdale 2800 and may be served there, wherever a person authorized to serve him may be found, or by mail.

## II. VENUE AND JURISDICTION

4. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331. Specifically, this complaint includes actions under 18 U.S.C. § 1030, et seq. (the Computer Fraud and Abuse Act), 18 U.S.C. 2701, et seq. (the Electronic Communications Privacy Act), and 28 U.S.C. §§ 2201-2202.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. This Court has specific personal jurisdiction over Defendants. Specifically:

   a. Defendants obtained and accessed Plaintiff's computers and email correspondence by illegally hiring independent contractors to hack into Plaintiff's and Austin, Texas based Nano Global Corporation's privately held computers, email accounts, and sensitive financial data.

   b. Defendants entered a financial transaction to access and utilize Plaintiff's email accounts and communications stored on Plaintiff's computers, or otherwise held by electronic storage service providers, to facilitate the collection of a debt allegedly owed by Plaintiff to Defendants' alleged client.

   c. Many of the illegally-accessed and obtained electronic communications originated from or were otherwise directed to Austin, Texas.

      d.      Many of the illegally-accessed and obtained electronic communications centered around Nano Global Corporation (an Austin-based entity) and a potential investment transaction.

      e.      The persons sending and receiving many of the illegally-accessed and obtained electronic communications live and reside in Austin, Texas.

### III.   BACKGROUND AND SUPPORTING FACTS

*A.*   *Nano Global Investment*

7. Plaintiff prides itself on being an alternative investment vehicle dedicated to dynamic approaches within an intensively competitive global financial market.

8. Plaintiff was founded in 2007 to take advantage of extraordinary investment opportunities in Asia, but Plaintiff has since expanded globally.

9. On December 20, 2018, Plaintiff executed a "non-binding" Summary of Proposed Key Terms of Series 2 Preferred Stock with Nano Global Corp. (**Nano**) (the **December 2018 Proposal**). As is customary, Plaintiff and Nano entered a non-binding termsheet based on industry practice, with a commitment to fund (including institutional syndication), subject to completion of due diligence mutually agreed by both parties.

10. The December 2018 Proposal made clear that it created "no legal obligations, commitments, or liabilities" on the part of Plaintiff.

11. The December 2018 Proposal provided that the closing for the proposed investment would occur "as soon as reasonably practicable."

12. The parties, thereafter, continued discussions and negotiations, but the proposed investment did not close. It is in the normal course of Plaintiff's business to review and negotiate potential investment opportunities, but the vast majority of those reviewed do not reach final documentation, much less funding and closing.

13. On June 14, 2019, Plaintiff executed a second "non-binding" Summary of Proposed Key Terms of Series 2 Preferred Stock with Nano (the **June 2019 Proposal**).

14. The June 2019 Proposal made clear that it created "no legal obligations, commitments, or liabilities" on the part of Plaintiff. As is customary, Plaintiff and Nano entered a non-binding termsheet based on industry practice, with a commitment to fund (including institutional syndication), subject to completion of due diligence mutually agreed by both parties.

15. The June 2019 Proposal provided that the closing for the proposed investment would occur on or before July 31, 2019.

16. The parties did not close by July 31, 2019.

17. On information and belief, prior to August 2, 2019, Defendants' alleged client met with representatives of Nano to discuss a potential investment. Plaintiff was not present.

18. On August 2, 2019, Steve Papermaster (the CEO of Nano) sent an email to members of Defendants' alleged client and Plaintiff (via Arun Kant) entitled "Nano Investment" (the **Nano Email**).

19. On August 4, 2019, Plaintiff replied to the Nano Email.

20. Plaintiff's reply stated that it was "committed to Nano."

21. Plaintiff's reply stated that it was "pleased to have [Defendants' alleged client] and some others join at friends and family round."

22. On August 5, 2019, a member of Defendants' alleged client replied to the Nano Email stating that it was "excited by the opportunity and [would] commit to an investment of $2m."

23. On August 12, 2019, Plaintiff executed a third "non-binding" Summary of Proposed Key Terms of Series 2 Preferred Stock with Nano Global Corporation (the **August 2019 Proposal**) that contemplated a potential investment of $75,000,000.00. Plaintiff was joined in this draft by other institutional investment capital.

24. Like its predecessors, the August 2019 Proposal made clear that it created "no legal obligations, commitments, or liabilities" on the part of Plaintiff. This, like the prior termsheets, was a non-binding termsheet based on industry practice, with a commitment to fund (including institutional syndication), subject to completion of due diligence mutually agreed by both parties.

25. The August 2019 Proposal provided that the closing for the proposed investment would occur on or before September 20, 2019.

26. On or around September 20, 2019, after not receiving certain due diligence documentation, Plaintiff and institutional partners opted not to invest in Nano by the due date, but continued working with Nano and a merger partner on extensive due diligence to see whether the deal could work out and fund. This work continued until March 2020, when COVID-19 made the financial market uncertain.

B. *Defendants' Illegal Conduct*

27. Defendants advertise themselves as debt collectors.

28. On November 21, 2022, Defendants sent a demand letter to Plaintiff holding themselves out as the, "authorized [sic] collection agent for [Defendants' alleged client]" (the **Demand**).

29. The Demand stated that Defendants were authorized to demand the sum of "USD$2m + interest and costs since 8/2019 plus a 1.5x 'liquidation preference' – well over USD $3m" from Plaintiff.

30. Defendants' Demand claims this amount is owing from Plaintiff due to "false statements" made to Defendants' client about Nano.

31. Prior to sending the Demand, Defendants hired independent contractors to hack into Plaintiff's computers, or otherwise hack into a third-party service provider's database, to illegally obtain Plaintiff's privately held email accounts and provide Defendants with certain email communications and sensitive information.

32. Defendants knowingly agreed to pay this hacker for Plaintiff's "unlawfully" obtained "email account":

> **From:** Mark Smith <mark_at_markjsmith_com_fewdy5gfxef0c2_s6jc5860@icloud.com>
> **Date:** November 19, 2022 at 4:14:59 PM EST
> **To:** Hide My Email <caper-humidor0n@icloud.com>
> **Subject: Re: Nano investment -2**
>
> Hello.
> I'm interested in a series of emails between Leonie Hill Capital and a company called Nano Global / a person named Mr Papermaster and his colleagues?
> Can you send me a sample of the sorts of emails you may have access to? I'm particularly interested in the time period between July 2019 and early 2020. Do you have an index of all the emails?
> Alternatively do you have their entire email account. I'm not sure if the information will be of value because if I do want to take Arun to court the rules of evidence will require that I obtained the documents lawfully. I'm guessing you obtained their email access unlawfully?
> What would be the cheapest price you'd sell me the entire email account for?
> Cheers.
> Mark.
>
> On Sat, 19 Nov 2022 at 1:28 pm <caper-humidor0n@icloud.com> wrote:
>
>> If you want more messages like this let us know we can send you all from this mail box. It will not be free.
>>
>> ReDDa&K

33. Defendants used illegally obtained electronic communications to threaten Plaintiff with the Demand. In fact, through his website Smith continues to solicit illegal materials, promising to keep his "hacker" sources private.

34. Plaintiff has never met Defendants' alleged client.

35. Plaintiff has never had any contact with Defendants' alleged client outside of one Nano Email conversation.

36. Defendants have harassed Plaintiff and have published illegally-obtained, sensitive, confidential, trade secret and proprietary information via blogs and podcasts.

## IV. CAUSES OF ACTION

**A. DECLARATORY JUDGMENT (28 U.S.C. §§ 2201-2202; 18 U.S.C. §§ 2701, 2707)**

a. *28 U.S.C. §§ 2201-2202*

37. Pursuant to 28 U.S.C. § 2201, in a case of actual controversy within its jurisdiction, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

38. Pursuant to Section 2201, Plaintiff seeks a declaration that[1]:

    a. Neither Defendant is an authorized agent of Plaintiff;

    b. Neither Defendant has the authority to access Plaintiff's email accounts;

    c. Defendants intentionally accessed Plaintiff's "protected computer" without authorization and recklessly caused damage to Plaintiff of at least $5,000.00.

    d. Defendants conspired with another to intentionally access Plaintiff's "protected computer" without authorization, and such conspiracy recklessly caused damage to Plaintiff of at least $5,000.00.

---

[1] Plaintiff intends for quoted terms to have the meaning provided by 18 U.S.C. §§ 1030, 2707, 2711, and 2510, as applicable.

e. Defendants intentionally accessed Plaintiff's "protected computer" without authorization and caused damage and/or loss to the Plaintiff of at least $5,000.00.

f. Defendants conspired with another to intentionally access Plaintiff's "protected computer" without authorization, and such conspiracy caused damage or loss to the Plaintiff of at least $5,000.00.

g. Defendants accessed and obtained Plaintiff's "electronic communications" from a "facility" through which "electronic communication services" are provided while such communications remained in "electronic storage";

h. Defendants' access of Plaintiff's "electronic communications" from a "facility" through which "electronic communication services" are provided while such communications remained in "electronic storage" was completed by Defendants without Plaintiff's authorization;

i. Defendants' actions, described by subsections (c) and (d) above, were completed willfully and knowingly;

j. In accessing and obtaining Plaintiff's "electronic communications" from a "facility" through which "electronic communication services" are provided while they remained in "electronic storage," Defendants did not act in good faith reliance on a court warrant, court order, a grand jury subpoena, a legislative authorization, or a statutory authorization;

k. In accessing and obtaining Plaintiff's "electronic communications" from a "facility" through which "electronic communication services" are provided while they remained in "electronic storage," Defendants did not act in good faith reliance on a request of an investigative or law enforcement officer under 18 U.S.C. § 2518(7);

l. In accessing and obtaining Plaintiff's "electronic communications" from a "facility" through which "electronic communication services" are provided while they remained in "electronic storage," Defendants did not act in good faith reliance on a good faith determination that 18 U.S.C. §§ 2511(3), 2702(b)(9), or 2702(c)(7) permitted Defendants' conduct.

m. Defendants' actions caused Plaintiff to suffer damages.

b.   *18. U.S.C. §§ 2701, 2707*

39.   Pursuant to 18 U.S.C. § 2701, it is a crime to either intentionally access without authorization a "facility"[2] through which an "electronic communication service"[3] is provided, or intentionally exceeds an authorization to access that facility, and thereby obtain, alter, prevent authorized access to a wire or electric communication while it is in "electronic storage"[4] in such system.

40.   Section 2707 permits a harmed party to pursue a civil action against any person or entity that violates Section 2701.

41.   Section 2707 allows a civil claimant to seek the following relief: (1) such preliminary and other declaratory relief as may be appropriate; (2) damages under subsection Section 2707(c); and (3) a reasonable attorney's fee and other litigation costs reasonable incurred.

42.   Pursuant to Section 2707, Plaintiff seeks a declaration that[5]:

a.   Neither Defendant is an authorized agent of Plaintiff;

b.   Neither Defendant has the authority to access Plaintiff's email accounts;

c.   Defendants accessed and obtained Plaintiff's "electronic communications" from a "facility" through which "electronic

---

[2] Defined in this Circuit to mean, "providers of communication services—such as telephone companies, Internet or email service providers, and bulletin board services—and the facilities they use to operate these services." *See BHL Boresight, Inc. v. Geo-Steering Solutions, Inc.*, Civil Action No. 4:15-CV-00627, 2016 WL 8648927, at *20 (S.D. Tex. Mar. 29, 2016) (citing *Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 462 (5th Cir. 1994)).

[3] Defined to mean, "any service which provides to users thereof the ability to send or receive wire or electronic communications." *See* 18 U.S.C. § 2711 (referring 18 U.S.C. § 2510 for applicable definitions); 18 U.S.C. § 2510(15).

[4] Defined to mean, "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication. *See* 18 U.S.C. § 2711 (referring 18 U.S.C. § 2510 for applicable definitions); 18 U.S.C. § 2510(15).

[5] Plaintiff intends for quoted terms to have the meaning provided by 18 U.S.C. §§ 2707, 2711, and 2510.

> communication services" are provided while such communications remained in "electronic storage";

d. Defendants' access of Plaintiff's "electronic communications" from a "facility" through which "electronic communication services" are provided while such communications remained in "electronic storage" was completed by Defendants without Plaintiff's authorization;

e. Defendants' actions, described by subsections (c) and (d) above, were completed willfully and knowingly;

f. In accessing and obtaining Plaintiff's "electronic communications" from a "facility" through which "electronic communication services" are provided while they remained in "electronic storage," Defendants did not act in good faith reliance on a court warrant, court order, a grand jury subpoena, a legislative authorization, or a statutory authorization;

g. In accessing and obtaining Plaintiff's "electronic communications" from a "facility" through which "electronic communication services" are provided while they remained in "electronic storage," Defendants did not act in good faith reliance on a request of an investigative or law enforcement officer under 18 U.S.C. § 2518(7);

h. In accessing and obtaining Plaintiff's "electronic communications" from a "facility" through which "electronic communication services" are provided while they remained in "electronic storage," Defendants did not act in good faith reliance on a good faith determination that 18 U.S.C. §§ 2511(3), 2702(b)(9), or 2702(c)(7) permitted Defendants' conduct.

i. Defendants' actions caused Plaintiff to suffer damages.

## B. VIOLATIONS OF 18 U.S.C. §§ 2701, 2707

43. Pursuant to 18 U.S.C. § 2701, it is a crime to either intentionally access without authorization a "facility"[6] through which an "electronic communication service"[7] is provided, or intentionally exceeds an authorization to access that facility, and thereby obtain, alter, prevent authorized access to a wire or electric communication while it is in "electronic storage"[8] in such system.

44. Section 2707 permits a harmed party to pursue a civil action against any person or entity that violates Section 2701.

45. Section 2707 allows a civil claimant to seek the following relief: (1) such preliminary and other declaratory relief as may be appropriate; (2) damages under subsection Section 2707(c); and (3) a reasonable attorney's fee and other litigation costs reasonable incurred.

46. Section 2707(c) provides: "The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability

---

[6] Defined in this Circuit to mean, "providers of communication services—such as telephone companies, Internet or email service providers, and bulletin board services—and the facilities they use to operate these services." *See BHL Boresight, Inc. v. Geo-Steering Solutions, Inc.*, Civil Action No. 4:15-CV-00627, 2016 WL 8648927, at *20 (S.D. Tex. Mar. 29, 2016) (citing *Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 462 (5th Cir. 1994)).

[7] Defined to mean, "any service which provides to users thereof the ability to send or receive wire or electronic communications." *See* 18 U.S.C. § 2711 (referring 18 U.S.C. § 2510 for applicable definitions); 18 U.S.C. § 2510(15).

[8] Defined to mean, "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication. *See* 18 U.S.C. § 2711 (referring 18 U.S.C. § 2510 for applicable definitions); 18 U.S.C. § 2510(15).

under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court."

47. Defendants have violated Section 2701.

48. Defendants intentionally and willfully hired an independent contractor to illegally obtain and access Plaintiff's email accounts stored on third party servers in order to further Defendants' debt collection activities.

49. Defendants knew their actions were unlawful at the time they engaged in such activity.

50. Defendants used the unlawfully accessed and obtained electronic communications to derive a personal financial benefit.

51. Plaintiff has incurred substantial damages and costs to remedy the egregious breach of security caused by Defendants.

52. Plaintiff seeks to recover the entirety of their damages from Defendants, as well as an award of attorneys' fees.

53. Plaintiff seeks an order from the Court of punitive damages due to Defendants' willful and intentional violation of 18 U.S.C. § 2701 et. seq.

### C. VIOLATIONS OF 18 U.S.C. § 1030, ET SEQ.

54. The Computer Fraud and Abuse Act (**CFAA**) makes it a crime for a person to intentionally access a protected computer without authorization, and as a result of such conduct, recklessly cause damage and/or simply cause damage or loss. *See* 18. U.S.C. § 1030(a)(5)(B) and (C).

55. The CFAA makes it a crime to conspire to commit an offense that violates the CFAA. *See* 18 U.S.C. § 1030.(b).

56. The CFAA provides a civil right of action for victims by permitting such victims to obtain compensatory damages and injunctive relief against the perpetrator. *See* 18 U.S.C. § 1030(g).

57. Defendants have violated the CFAA.

58. Defendants, directly or through a conspiracy, have unlawfully accessed Plaintiff's protected computer without authorization for the purpose of furthering an alleged debt collection effort.

59. Defendants' actions have recklessly caused Plaintiff to suffer damages, including, but not limited to, the expenditure of amounts of at least $5,000.00 to remedy the egregious breach of security caused by Defendants.

60. Plaintiff seeks to recover the entirety of their economic damages from Defendants under the CFAA.

## V. ATTORNEY'S FEES

61. To the extent Plaintiff is the prevailing party in this suit, it is entitled to attorneys' fees and costs pursuant to 18 U.S.C. § 2707.

## VI. PRE AND POST-JUDGMENT INTEREST

62. Plaintiff seeks pre- and post-judgment interest at the rates set forth in Texas' common law, the Texas Finance Code, or as otherwise permitted by all applicable federal statutes.

## PRAYER

Plaintiff prays that Defendants, and each of them, be cited to appear and answer, and that Plaintiff have final judgment for the following:

a) Declaratory relief as specified hereinabove;

b) Actual damages;

c) Pre-judgment and post-judgment interest as allowed by law;

d) Attorneys' fees and costs of suit; and

e) Punitive damages.

Respectfully submitted,

*/s/ Steve Skarnulis*
Steve Skarnulis
State Bar No. 24041924
skarnulis@cstrial.com
Benjamin D. Evans
State Bar No. 24081285
bevans@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile
**ATTORNEYS FOR PLAINTIFF**